393 A.2d 770

**Mamie CARSWELL, Napoleon Carswell, and Lena Roberts**

**v.**

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.**

Superior Court of Pennsylvania.

Argued March 23, 1977.

Decided Oct. 20, 1978.

Lewis H. Van Dusen, Jr., Philadelphia, with him Norman M. Hegge, Jr., Philadelphia, for appellant.

Albert W. Sheppard, Jr., Philadelphia, with him Marvin W. Factor, Philadelphia, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On May 29, 1970, at approximately 9:30 P.M., appellees Mamie Carswell and Lena Roberts were passengers on a west-bound subway train operated by SEPTA in Philadelphia.[1] As the train was leaving the elevated station at 46th Street, appellees saw a "flash" and heard a loud noise and the breaking of glass, all at the window immediately next to

1. Appellant Napoleon Carswell is the husband of Mamie Carswell; his suit was for loss of consortium. Hereafter, we shall use "appellees" to refer to Mamie Carswell and Lena Roberts only.

their seats. In reaction, appellees fell to the floor and were injured.

The cause of the accident was not precisely proved at trial. Appellees testified that as the train started to leave the station they noticed a group of boys standing on the platform opposite their window. They said that they did not see the boys do anything alarming or suspicious; they could say only that the boys were standing and smoking. Appellees' theory was that one of the boys threw a rock or other missile at the window, causing the frightening flash and sound, and the breaking of the window. SEPTA did not dispute that the accident occurred in this way.[2]

A jury found for Mamie Carswell in the amount of $17,-500, for Lena Roberts in the amount of $5,300, and for Napoleon Carswell in the amount of $1,500. SEPTA filed a motion for judgment n. o. v. or new trial, and has appealed the lower court's order denying the motion.

Judgment n. o. v.

1

■ Appellant's first[3] argument for judgment n. o. v. is stated as: "Neither the Metropolitan Transportation Authorities Act of 1963 Nor the Present Law With Respect to the Liability of Public Agencies Imposes Liability on SEPTA for Criminal Actions by Third Parties." Appellant's Brief at 13. We admit to some difficulty in understanding this statement, for we are not sure what appellant means by the "present law."

Appellant concedes that "the 'measure of care' owed by SEPTA is the same as that which would have rested upon a private owner of the same facility. *Stevens v. City of Pittsburgh,* 329 Pa. 496, 129 Pa.Super. 5, 198 A. 655 (1938)."

---

2. In its brief to us SEPTA alludes to lack of proof of causation, but does not raise this as one of the questions presented on appeal. *See* Pa.R.A.P. 2115.

3. In appellant's brief this argument is placed second. We treat it first for convenience of discussion.

Appellant's Brief at 14. The question, therefore, is how to determine the measure of care so owed. Appellees suggest that the present law governing that determination is as stated in section 344 of the Restatement (Second) of Torts (1965), which is followed in Pennsylvania. *Moran v. Valley Forge Drive-In Theatre, Inc.*, 431 Pa. 432, 246 A.2d 875 (1968). We are persuaded by this suggestion.

Section 344 provides:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

■ It may be that appellant does not resist application of section 344 but means to argue that because of its peculiar status as a public authority, it may satisfy its duty under section 344 solely by relying on the protection provided for passengers by the municipal police force. We believe the law to be to the contrary. *See Kenny v. Southeastern Pennsylvania Transportation Authority*, 581 F.2d 351 (3d Cir. 1978) ("Although steps had been taken to increase police protection, we cannot say as a matter of law that this was enough to preclude SEPTA's liability."); Restatement (Second) of Torts § 344, Comment *e* (public utility may be required to do more than give warning, and "to take additional steps to control the conduct of the third person, or otherwise to protect the patron against it"); *cf. Mangini v. Southeastern Pennsylvania Transportation Authority*, 235 Pa.Super. 478, 344 A.2d 621 (1975) (trolley driver required to protect passengers from attacks from outsiders). We therefore hold that appellant's reliance on the Philadelphia police was not as a matter of law sufficient to satisfy the duty imposed by section 344.

This holding adopted, it becomes immaterial whether the Metropolitan Transportation Authorities Act *added* to appellant's duty of care towards its passengers; section 344 already imposed a duty applicable to the facts of this case. It likewise becomes immaterial whether appellant is prohibited from exercising a general police function, as it argues. The case was tried, not on the theory that appellant was required to provide a police force, but rather on the theory that it was required to "give a warning adequate to enable [its] visitors to avoid the harm, or otherwise to protect them against it." It was for the jury to determine whether appellant could satisfy this requirement simply by relying on the police, or should have provided additional "stationmen" (as appellant did at various times when difficulties were anticipated, *e. g.,* at school closing time, or when there was an event at the Arena, R. 12a), or should have taken other, more drastic steps (*e. g.,* move the cashier's booth from the mezzanine level to the platform level so that the cashier could watch for possible trouble and send for help, *see Kenny v. Southeastern Pennsylvania Transportation Authority, supra* at 355.

2

Appellant's second argument for judgment n. o. v. is that appellees failed to prove all elements of their cause of action.

■ We read section 344 to require proof of three elements: first, that the plaintiff was injured by the kind of acts described in the section; second, that such acts were being done, or were likely to be done; and third, that the defendant failed in one of two duties—either to take reasonable care to discover that such acts were being done or were likely to be done, or to take reasonable care to provide appropriate precautions.[4] It will be noted that the second

---

4. In addition, and as a preliminary, section 344 also requires proof that the defendant is the possessor of the land in question, that he holds it open to the public for entry for his business purposes, and that the plaintiff entered on the land for such purposes.

element is not explicit in the language of section 344, but we are satisfied that it is implicit. Here, for example, before appellees proved that appellant *should have known* that the station was a dangerous place, they had to prove that it *was* dangerous; otherwise appellant could be held liable for its failure to take precautions in response to prank calls recounting incidents that in fact had never happened.

Appellant argues that the second element was not proved, in that appellees did not show that such acts as rock throwing were "likely to be done." The evidence on this point may be summarized as follows.

Appellees testified that when they disembarked at the 60th Street station shortly after the incident, they reported the incident to the cashier on duty there, who "said that so many incidents, so many accidents, she said that's a terrible station." R. 50a. Appellees also testified that another cashier, also in the fare booth at 60th Street, said that the 46th Street station was "a bad place." R. 83a.[5]

A SEPTA service supervisor (charged with responding to various complaints at the elevated stations on the subway line), one J. Petaccio, testified on deposition that around the time of the incident in this case he received an average of one or two calls a night (between the hours of 6 and 10 or 11 P.M.) from 46th Street. He said that the incidents reported were "[f]are evasion, disturbances on the train such as a drunk laying on the platform, or . . . rowdyism . . . ." R. 238a–239a. He did not define what he meant by "rowdyism."

Another SEPTA service supervisor, one G. Coughlin, testified that he received numerous complaints of rowdyism at 46th Street, R. 20a, perhaps one a day, R. 21a; and he defined "rowdyism" as: "Might possibly be a stone thrown; might be pushing; a holding of a door; a spitting on a widow [*sic*; "window" no doubt intended] or spitting on an individual." R. 24a. As to the frequency of stone-throwing, he testified:

**5.** The admission of the cashiers' statements over appellant's objection that they were hearsay is assigned as error, and is disscussed below.

Q. In fact, you had many complaints of stone throwing at that station, that was one of the regular complaints that you had there, right?

A. I had some, yes.

R. 25a.[6]

■ This evidence, when viewed in the manner appropriate to consideration of a motion for judgment n. o. v.,[7] was a sufficient basis for the jury's finding that the act that injured appellees was likely to be done. It is true that a number of the incidents recounted by the SEPTA supervisors, such as holding a door and fare evasion, did not involve any definite or necessary danger to the physical safety of appellant's passengers. It is also true that as regards the only two kinds of incidents that did involve such a danger, the evidence is rather vague; thus, the jury was not told how many times there was a pushing or a stone-throwing. Nevertheless, the jury would have been justified in reasoning as follows: The testimony shows that 46th Street was a "rowdy" station, marked by many and varied disorderly activities. Appellant should have known that if it did not take appropriate steps to control this rowdiness, it might grow worse, and end in injury to one of appellant's passengers.

Appellant's reliance on *Pollack v. Southeastern Pennsylvania Transportation Authority*, 228 Pa.Super. 911, 322 A.2d 672, (1974), *aff'g per curiam* 61 Pa.D.&.C.2d 711 (C.P.Phila. 1973), and *Romisher v. Southeastern Pennsylvania Transportation Authority*, 65 Pa.D.&.C.2d 483 (C.P.Phila.1974), is misplaced. *Pollack* turned only on the propriety of summary judgment against the plaintiff for failure to file suit

---

6. The admission of Petaccio's and Coughlin's testimony over appellant's objection that it was hearsay is assigned as error on appeal. We do not reach the point. *See,* however, note 19 and accompanying text, *infra.*

7. "In considering a motion for judgment n. o. v., the evidence, together with all reasonable inferences capable of being drawn therefrom, must be viewed in the light most favorable to the verdict winner." *Winkler v. Seven Springs Farm, Inc.,* 240 Pa.Super. 641, 643–4, 359 A.2d 440, 441 (1976).

within six months after the date of injury, as required by law.[8] *Romisher,* while closer to this case on its facts, did not decide a question of foreseeability (although there is extensive *dictum* on the point); instead, there the lower court *en banc* ordered a new trial because the findings of fact by the first trial judge (deceased at the time the court *en banc* considered the defendant's exceptions) did not provide sufficient basis for consideration of the questions of foreseeability and duty of care.

### 3

Appellant's third argument for judgment n. o. v. is that its negligence was passive and superseded by the criminal conduct of a third party. This argument depends on an assumption that the criminal conduct of the third party was not foreseeable by the actor, *see* sections 302 and 448 of the Restatement (Second) of Torts (1965), but we have already decided that it was foreseeable.

### New Trial

■ As has been mentioned, note 5 *supra,* appellant objected to appellees' testimony of the 60th-Street cashiers' statements concerning conditions at 46th Street, on the ground that the statements were inadmissible hearsay. There is no question that the statements were hearsay, for they were by out-of-court declarants and were offered to prove the truth of the matter asserted: that 46th Street station was a dangerous place.[9] The question is whether the statements were admissible under one of the exceptions to the rule against hearsay.

On this question, in response to appellant's motion for new trial, the lower court held that the statements were within the "res gestae exception." Lower Court Opinion, R. 196a. At the trial itself, however, the court had ruled that the

---

8. Metropolitan Transportation Authorities Act, Act of August 14, 1963, P.L. 984, § 36; 66 P.S. § 2036 (Supp.1978).

9. We omit (because it has not been argued) consideration of the possibility that the statements were inadmissible as mere opinion.

statements were admissible as vicarious admissions.[10] We
have concluded that the statements were within neither
exception.

### 1

By "res gestae exception" we take the lower court to
mean that the cashiers' statements were excited utterances,
for the statements could not be viewed as any of the three
other exceptions covered by the "rather general and impre-
cise use of the term *res gestae*," *Commonwealth v. Pronko-
skie*, 477 Pa. 132, 137 n. 3, 383 A.2d 858, 860 n. 3 (1978), that
is, as declarations of present bodily conditions, or present
mental states and emotions, or present sense impressions.
*Id.*, 477 Pa. at 137, 383 A.2d at 860; McCormick, *Evidence*
§ 288 (2d ed. 1972).[11] However, the cashiers' statements
were not excited utterances, for the record demonstrates
that the cashiers' minds had not been "suddenly made sub-
ject to an overpowering emotion caused by some unexpected
and shocking occurrence, which [those] person[s] had just
participated in or closely witnessed . . . ." *Allen v.
Mack*, 345 Pa. 407, 410, 28 A.2d 783, 784 (1942). We assume
that the accident that befell appellees was unexpected and
shocking, but it is clear that the cashiers could not have
witnessed it. *See Williamson v. Philadelphia Transportation
Co.*, 244 Pa.Super. 492, 368 A.2d 1292 (1976).

### 2

Whether the cashiers' statements were admissible as
vicarious admissions is a more difficult question, and much
more interesting. There is no recent Pennsylvania law on
the admissibility of an employee's statements as substantive

---

10.   THE COURT: Well, I have always ruled that where you have an
employee of a Defendant or an employee of a Plaintiff, it doesn't
make any difference, and the conversation involved, something
immediately or within moments after an accident, what the em-
ployee says, I have always said is admissible.
R. 49a–50a.

11.   This writer has urged the abandonment of the term "res gestae."
*Commonwealth v. Dugan*, 252 Pa.Super. 377, 381 A.2d 967, 970
(1977) (Concurring Opinion).

evidence against his employer. A formulation from a case decided in 1888 is as follows:

> In order to warrant the proof of admissions by an agent, one or more of the following facts must exist: It must appear that the agent was specifically authorized to make them, or his powers must have been such as to constitute him the general representative of the principal, having the management of the entire business; . . . or, if [the admissions] are non-contractual they must have been part of the res gestae. *Oil City Fuel Supply Co. v. Boundy*, 122 Pa. 449, 460, 15 A. 865, 866 (1888).

The first two situations described in this formulation are the traditional exceptions, satisfied only when either express or implied authority to make the statement is shown—proof that is rarely possible. *See* McCormick, *supra* § 267, at 640; Restatement (Second) of Agency § 286 (1958). The third situation described—that the admission "must have been part of the res gestae"—is not at all clear. Is it surplusage, referring to the quite separate res gestae exception to the hearsay rule? *See, e. g., Shafer v. Lacock, Hawthorn & Co.*, 168 Pa. 497, 32 A. 44 (1895). Or is it an imprecise attempt to describe a situation where an employee's statement may be admitted even though there has been no proof that the employer authorized the statement? *See, e. g., Pennsylvania Railroad Co. v. Books*, 57 Pa. 339 (1868). We cannot answer this question, for the resort to the term "res gestae" has had its usual result of hindering understanding.[12] *See* note 11, *supra.* Given this state of the law, we must try to make a fresh start.

For the sake of argument we shall assume that the law of Pennsylvania on employees' statements has been the traditional, restricted rule: that such statements are admissible against the employer as vicarious admissions only upon proof

12. "That there are two distinct and unrelated principles involved must be apparent; and the sooner the courts insist on keeping them apart, the better for the intelligent development of the law of evidence." 4 Wigmore, *Evidence* § 1078, at 170 (Chadbourn rev. 1972).

of either express or implied authority to make the statements. We are persuaded, however, that this should no longer be the law of Pennsylvania.

Many jurisdictions [13] have followed the recommendation of distinguished commentators on the law of evidence, and have adopted a broader rule under which employees' statements are admissible if (in a typical formulation) "the declaration concerned a matter within the scope of an agency or employment of the declarant for the party and was made before the termination of the agency or employment." Model Code of Evidence, Rule 508(a) (1942). *See also* Fed.R. Evid. 801(d)(2)(D). The reasons offered in support of this change are varied, but tend either to stress the reasonable reliability of employees' statements made within the scope of their employment, *see* Model Code of Evidence, Rule 508, Comment *b*; McCormick, *supra* § 267, at 641, or to reflect a common-sense resistance to making a rule of evidence turn on ephemeral distinctions, *see* Wigmore, *supra* n. 12, at 166 n. 2.[14]

We might simply say that because of this "substantial trend," [15] we should hold the cashiers' statements admissible, for the statements did (we have no doubt) concern a matter

---

**13.** Wigmore lists: Arkansas, Canal Zone, Florida, Idaho, Kansas, Maine, Minnesota, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, South Carolina, Utah, Virgin Islands, and Wisconsin. Wigmore, *supra* n. 12, at 166–69 n. 2, and 1977 Supp. at 13.

**14.** Wigmore is more than usually acerbic on this point:
*Rankin v. Brockton Public Market*, 257 Mass. 6, 10, 11, 153 N.E. 97, 98 (1926) (plaintiff was hit by a bottle, while a customer in the store, and fainted; as she came out of the faint, in an adjacent room a sobbing saleswoman said "she was sorry, she was the one who tossed upon the carrier the bottle that hit the plaintiff on the head"; excluded, because the saleswoman had no "authority . . . to bind the defendant"; yet she had authority to sell goods and make a profit for defendant; then why not an authority to say how she sold them? Such quibbles bring the law justly into contempt with laymen); . . . .
Wigmore then cites, without comment, *McGrath v. Pennsylvania Sugar Co.*, 282 Pa. 265, 127 A. 780 (1925).

**15.** Fed.R.Evid. 801, Advisory Committee's Note.

within the scope of their employment.[16] We have concluded, however, that we should not do this, for on the facts of this case, to do so would violate a fundamental principle of the law of hearsay evidence.

When hearsay evidence is admitted, the result is to deprive the opponent of the evidence of the ability to cross-examine the declarant. This is a dangerous thing to do, for had cross-examination been possible it might have been shown that the evidence was unreliable, because, for example, the declarant was biased, or not in a position to see what his statement purported to describe. Accordingly, as a general principle, before a hearsay statement will be admitted, the circumstances giving rise to the statement must offer sufficient assurances of reliability to compensate for the opponent's inability to cross-examine the declarant. 5 Wigmore, *Evidence* § 1422 (Chadbourn rev. 1974).[17]

Here, appellees as proponents of the evidence made no showing that there were sufficient assurances that the cashiers' statements were reliable; indeed, to the contrary, the record suggests *un* reliability, for it shows that the cashiers were employed at the 60th Street station, and there was no showing that their statements about conditions at the 46th Street station were based on first-hand knowledge.

At this point it is important to note a distinction between, on the one hand, a statement *by a party*, or

16. There was testimony that cashiers were expected to receive complaints about incidents, and to forward these complaints to a dispatcher.

17. We do not suggest this as a compendious statement of the theory on which the admission of hearsay evidence is justified. Thus, another fundamental principle is that sufficient necessity should be shown for the admission, or at least that the admission will be expedient. 5 Wigmore, *Evidence* § 1421. *And see* Tribe, *Triangulating Hearsay,* 87 Harv.L.Rev. 957 (1974).

The usual way of making this showing is to prove that the declarant is unavailable as a witness. In this regard, it may be noted that there is some authority for the suggestion that an employee's statements should not be admitted without a showing of unavailability. Utah R. Evid. 63(9)(a). We express no opinion whether we should adopt this suggestion, for we need not reach the point to decide this case.

*authorized by him,* and on the other, a statement *by the party's unauthorized employee.* It is often stated as an axiom that the requirement of first-hand knowledge, while common to other hearsay exceptions, is not applicable to admissions. McCormick, *supra* § 263; 4 Wigmore, *Evidence* § 1053; *Salvitti v. Throppe,* 343 Pa. 642, 23 A.2d 445 (1942). The axiom is sound enough when applied to a party's own admissions, or to admissions by an agent or employee whom the party has authorized to speak for him. As Wigmore has it:

> [A] person's assertions regarding his own [or, in the case of an authorized-to-speak agent, his principal's] affairs have always some testimonial value regardless of the exactness of his personal observation of the data leading to his belief. When a man says, "I own this house," or "My son graduated from college last June," or "A cargo of mahogany is now on its way to me from Mexico," we give some credit to his statement, in everyday life, because we know that he is likely to have taken pains to ascertain dependable facts in his own affairs. 4 Wigmore, *Evidence* § 1053, at 18.[18]

However, the axiom is not sound when applied to other employees. It is unrealistic to assume that merely because someone is an employee, he will consider his employer's affairs as "his own affairs," regarding which he will "take[ ] pains to ascertain dependable facts." Sometimes an employee may feel this way, but other times he will not; and given the complexity and impersonality of most modern employment, these other times will be the more usual. As observed by the Court of Appeals of New York, in *Cox v. State,* 3 N.Y.2d 693, 698, 171 N.Y.S.2d 818, 822, 148 N.E.2d 879, 882 (1958):

**18.** McCormick puts it this way:
[I]t seems sufficient to justify the general dispensing with the knowledge qualification to say that admissions which become relevant in litigation usually concern some matter of substantial importance to the declarant upon which he would probably have informed himself so that they possess, even when not based on firsthand observation, greater reliability than the general run of hearsay. McCormick, *supra* § 263, at 632.

> The theory upon which this class of evidence [admissions] is held to be competent is that it is highly improbable that a party will admit or state anything against himself or his own interest unless it is true. . . . This reasoning is obviously inapplicable where, as here, the so-called admission is not made by a party but merely by its employee who has no interest in the outcome of the litigation and thus has no incentive to carefully check the correctness of the statements he makes.

See also Falknor, *Vicarious Admissions and the Uniform Rules,* 14 Vand.L.Rev. 855, 859–60 (1961). In this regard it is further worthy of note that at least one commentator has raised the question of how the Federal Rule is to be understood. Rothstein, *Understanding the New Federal Rules of Evidence* 109–10 (1973).

Accordingly, we hold that the lower court erred in overruling appellant's objections to the admission of the cashiers' statements. As proponents of the statements, appellees were obliged to show, but did not show, that the statements were either authorized, or based on first-hand knowledge, or for some other reason should be accepted as reliable.

■ It only remains to consider whether the erroneous admission of the cashiers' statements was harmless error. It might be argued that the statements were merely cumulative, given the other testimony by SEPTA supervisors about incidents at 46th Street. However, this other testimony was admitted by the lower court, correctly, not as an exception to the hearsay rule and for the truth, but rather to prove notice to appellant, and therefore not hearsay at all.[19] (This was the lower court's reason for admitting the evidence at trial; in its opinion to us the court relied on the admissions exception.) Thus the cashiers' statements were the only evidence to show that conditions at the 46th Street station were dangerous. Furthermore, we do not think that the

---

**19.** We considered the supervisors' testimony in our assessment of the question of foreseeability, *supra,* because, even though it was not competent for that purpose, appellant did not ask the lower court to instruct the jury to restrict consideration of the testimony to the purpose for which it was admitted and was competent, *i. e.,* notice.

cashiers' statements were merely cumulative. Appellees offered only four witnesses on the condition of the station— the two cashiers and the two supervisors. Given the rather vague testimony by the supervisors, we cannot say that the balance was not tipped for the jury by the testimony of the cashiers' statements. Accordingly, a new trial must be awarded.[20]

Reversed and remanded for a new trial.

JACOBS, President Judge, and CERCONE, PRICE and VAN der VOORT, JJ., concur in the result.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

---

**20.** Because we find reversible error on the evidentiary point, we omit discussion of appellant's other assignments of trial error.