517 A.2d 1006

Helene Ludwin, Individually and as Executrix of the Estate of Charles Ludwin, Deceased v. Port Authority Transit Corporation Division of The Delaware River Port Authority City of Philadelphia, and Southeastern Pennsylvania Transportation Authority. Appeal of: Port Authority Transit Corporation Division of The Delaware River Port Authority, Appellant.

Argued June 11, 1986, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, BARRY and COLINS.

*Marguerite J. Ayres,* with her, *Gary L. Azorsky, Mesirov, Gelman, Jaffe, Cramer & Jamieson,* for appellant.

*Barbara R. Axelrod,* Divisional Deputy in Charge of Appeals, with her, *Gary Howard Kaplan,* Chief Assistant City Solicitor, *Ralph J. Luongo,* Assistant City Solicitor, and *Handsel B. Minyard,* City Solicitor, for appellee.

OPINION BY JUDGE MACPHAIL, November 7, 1986:

The Port Authority Transit Corporation (PATCO) appeals here from an order of the Court of Common Pleas of Philadelphia County which granted the Motion for Judgment on the Pleadings of the City of Philadelphia (City). We reverse and remand.

Helene Ludwin initiated this action against the City, PATCO and the Southeastern Pennsylvania Transportation Authority (SEPTA) claiming that on the evening of December 13, 1982 her now deceased husband suffered serious injuries as the result of a criminal assault in an underground concourse in the vicinity of Eighth Street in Philadelphia. In paragraph five of her complaint, Mrs. Ludwin alleges that all three of the named entities "either individually, jointly and/or severally, owned, controlled, possessed, managed and operated the Underground Concourse of the Eighth and Chestnut Streets Subway Station enroute to the PACTO High Speed Line, Philadelphia, Pennsylvania."[1] In paragraph eight of her complaint, Mrs. Ludwin alleges the following:

> The negligence of the Defendants herein, PATCO, City of Philadelphia and SEPTA, individually, jointly and/or severally . . . consisted of the following:
>
> (a) Failure to have proper and adequate security, in and about the said scene of this incident;

---

[1] Reproduced Record (R.R.) at 4a.

(b) Failure to properly warn the Plaintiff's Decedent, and other individuals, of the possibility of assault, mugging and/or robbery;

(c) Failure to properly provide necessary security personnel and/or security equipment for the safety of the Plaintiff's Decedent, and other individuals;

(d) Failure to conform to the standards applicable in the community with regard to security and safety;

(e). Failure to properly inspect the aforesaid area to determine the presence of any possible and undesirable assailants, and therefore, protect the person of the Plaintiff's Decedent, and other individuals therefrom;

(f) Carelessness;

(g) Negligence at law; and

(h) Such other acts of negligence as may appear during the course of discovery and at trial.[2]

PATCO, by the way of a cross-claim against the City, alleges that if Mr. Ludwin was injured as a result of the City's negligence, then the City is liable to plaintiff or jointly and severally liable with PATCO, or liable over to PATCO by way of contribution and/or indemnity.[3] In an amended pleading, PATCO asserts in an additional claim that the City is liable on the basis of the lease agreements by which PATCO leases the premises from the City.

The City filed a Motion for Judgment on the Pleadings, arguing that it is immune from suit under Sections 8541 and 8542 of the Judicial Code, 42 Pa. C. S. §§8541, 8542. On June 17, 1985 the Common Pleas

---

[2] R.R. at 4a-5a.

[3] R.R. at 14a.

Court ruled that the City enjoys complete immunity from this action and that the indemnification clauses in PATCO's leases do not apply because they specifically state that the City will not indemnify PATCO where PATCO has been charged with negligence.

The pertinent provisions of the lease agreements read as follows:

8. ACCESS BY CITY

The obligation of the City to exercise, on the Leased Properties, its police authority and control in the prevention or suppression of crime, riot or disorder and for the purpose of extinguishing fire shall not be abridged by any provision of this Lease. The City shall also have access to the Leased Properties at any and all reasonable times and under reasonable regulations of Authority, and without avoidable interference with the operation thereof, for the installation, repair, maintanance, removal or other work necessary to be done by City, its lessees or licensees, in connection with sewers, pipe lines, conduits, cables, drains or other underground or overhead structures, or for any lawful municipal purpose. City, through its Department of Public Property and said Department's officers and employees duly authorized, shall at any and all reasonable times and under reasonable regulations of Authority, and without avoidable interference with the operation thereof, also have the right of access to all parts of the Leased Properties for the purpose of inspection or examination of the condition thereof, for the making of any inventory provided for in the Lease, for the purpose of doing thereon any work City is required to under this Leasse and for accounting purposes. City agrees to defend, indemnify and save Au-

thority harmless from all actions, claims, liability, judgments, damages, loss and expenses which may at any time be made or instituted against, or incurred by Authority by reason of any injury or death of any person or damage to any property (including the Leased Properties and the Retained Properties) resulting from any act or omission, negligent or otherwise, of any servant, agent, employee, lessee or licensee of City while upon the Leased Properties or while upon the Property of Authority, by reason of permitting such access.

. . . .

10. INDEMNITIES

A. By Authority: Unless the following shall be proximately caused by the negligence of City's servants, employees, agents, operators, lessees or licensees, Authority agrees to defend, indemnify and hold City harmless from, and to bear all costs in connection with, all claims, actions, suits, judgments, liability, damages, losses and expenses which may at any time be made or instituted against, or incurred by City, with respect to any injury or death of any person or damage to any property . . . and resulting:

(1) from the operation or maintenance of the Leased Properties, or

(2) from any act or omission, negligent or otherwise, of Authority's employees, agents, operators, lessees or concessionaires in the use of the Leased Properties;

. . . .

B. By City: Unless the following shall be proximately caused by the negligence of Authority's employees, agents, operators or lessees, City agrees to defend, indemnify and hold Au-

thority harmless from, and to bear all costs in connection with, all claims, actions, suits, judgments, liability, damages, losses and expenses which may at any time be made or instituted against, or incurred by Authority, with respect to any injury or death of any person or damage to any property . . . and resulting:

. . . .

(4) from any cause or causes growing out of crime, riot, disorder, fire, flood or bursting or leaking water mains, gas mains or sewers.[4]

If the City did not lease the premises to PATCO under these terms but rather solely possessed and controlled the premises, it could not be held liable for Mr. Ludwin's injuries. Section 8542 of the Judicial Code, 42 Pa. C. S. §8542 sets forth the exceptions to the general provision of Section 8541 of the Judicial Code, 42 Pa. C. S. §8541, that political subdivisions are immune from damages on account of any injury to persons or property caused by acts of a local agency or employees thereof. The pertinent exception provides:

(b) **Acts which may impose liability**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(3) *Real Property*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.

Section 8542(b) of the Judicial Code, 42 Pa. C. S. §8542(b).

---

[4] R.R. at 130a-132a; 148a-150a; 191a-193a; 212a–214a.

This case involves allegations concerning the City's control of criminals, not the City's control of real property. The complaint relies upon alleged failures as to warnings, security personnel, security equipment and inspection—all matters relating to law enforcement and personal property rather than to the care, custody or control of the real property.

A political subdivision may be found liable under 42 Pa. C. S. §8542(b)(3) only when there is some defect *in* the real estate which proximately causes the plaintiff's injury such as negligent maintenance, *Mascaro v. Youth Study Center*, 89 Pa. Commonwealth Ct. 388, 492 A.2d 786 (1985); conducting an activity *upon* the real estate for which the real estate is not properly designed, *Bersani v. School District of Philadelphia*, 310 Pa. Superior Ct. 1, 456 A.2d 151 (1982); or allowing the condition of the property to be such that criminals can "nest" on the property, *see Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977).

PATCO argues that the city could be held directly liable under Section 344 of the Restatement (Second) of Torts (1965). Section 344 is firmly entrenched as part of the common law of Pennsylvania. *See Moran v. Valley Forge Drive-In Theater, Inc.*, 431 Pa. 432, 246 A.2d 875 (1968); *Murphy v. Penn Fruit Co.*, 274 Pa. Superior Ct. 427, 418 A.2d 480 (1980); *Carswell v. Southeastern Pennsylvania Transportation Authority*, 259 Pa. Superior Ct. 167, 393 A.2d 770 (1978). Section 344 states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third per-

sons or animals, and by the failure of the posses-
sor to exercise reasonable care to

(a) discover that such acts are being done or
are likely to be done, or

(b) give a warning adequate to enable the
visitors to avoid the harm, or otherwise to pro-
tect them against it.

While Section 344 may provide a cause of action for
third party criminal attacks on property owned by
private parties, it does not provide a cause of action
against a party cloaked in governmental immunity. 42
Pa. C. S. §8542(a) requires that a cause of action existed
at common law before any of the exceptions to immuni-
ty found in 42 Pa. C. S. §8542(b) are applicable. There
clearly is a cause of action at common law in the instant
case, provided that Mrs. Ludwin can show negligence.
However, subsection (b)(3) of 42 Pa. C. S. §8542 re-
quires that to sustain a cause of action a plaintiff must
show that an act of care, custody or control by a political
subdivision while in possession of real property caused
the injury to the plaintiff. In other words, the plaintiff
in order to satisfy the requirements of 42 Pa. C. S.
§8542(b)(3), must show that some defect in the physical
quality of the governmental subdivision's real estate was
causally connected to the plaintiff's injury. Mrs. Ludwin
has not pleaded any facts which meet those require-
ments.

In reaching our conclusion, we reject the reasoning
of this Court in *Johnson v. Southeastern Pennsylvania
Transportation Authority,* 91 Pa. Commonwealth Ct.
587, 498 A.2d 22 (1985) that only a cause of action un-
der Section 344 of the Restatement (Second) of Torts
(1965) need be proved in order that a plaintiff may
maintain a cause of action against a governmental subdi-
vision for a third-party criminal attack.

We find, however, that we cannot affirm the Common Pleas Court's granting of the City's Motion for Judgment on the Pleadings. Section 10B(4) of the lease makes clear that the City will hold the Authority harmless for torts growing out of crimes which were not caused by the negligence of the Authority. We feel that the terms of the lease are tantamount to a waiver of immunity by the City. The City can waive its immunity by ordinance. *City of Philadelphia v. Middleton,* 89 Pa. Commonwealth Ct. 362, 492 A.2d 763 (1985). We see no reason why it may not also waive immunity through a lease agreement.

While it is true that the City cannot be held directly liable, it can, under the terms of the lease, be liable over to the Authority for harm caused by crimes unless the harm was proximately caused by employees of the Authority. At this stage of the proceedings, it is too early to tell whose negligence, if indeed the negligence of any of the named parties, was to blame for the attack. It is clear, however, that Mrs. Ludwin has pleaded sufficient facts which *could* result in the City being held liable. In such circumstances, judgment on the pleadings is inappropriate.

We reverse the Common Pleas Court and remand for proceedings consistent with this opinion.

### ORDER

The order of the Common Pleas Court of Philadelphia County granting the City of Philadelphia's Motion for Judgment on the Pleadings is reversed and the case remanded for proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

CONCURRING AND DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I concur in that part of the majority's opinion which holds that a specific causal relationship between a physical defect in the real estate and the inflicted harm be pleaded to maintain a cause of action against a governmental subdivision under the real property exception to the 1980 Immunity Act. 42 Pa. C. S. §8542(b)(3).

However, I respectfully dissent from that part of the majority's opinion which holds that the City may be liable over to the Authority for the harm suffered by Mr. Ludwin through the terms of the lease provision.

This case presents the unique factual situation where one municipality grants to a separate distinct public corporate entity its right to operate a business within its own infrastructure. The City of Philadelphia granted to PATCO the right to operate a high-speed transit line, including the orderly ingress and egress of commuting passengers, inside the City underground rail system. For this limited purpose, the City relinquishes its control over the property for the proper fulfillment of the independent agency's objective.

Because a municipality has a responsibility which exceeds the limited interests of its lessee, it must refuse to abdicate its responsibility to insure the safety, health and welfare of the citizens it governs. This recognition of its duty distinguishes the lease under review herein from ordinary private sector lease agreements. I believe the indemnities and right-to-access clauses in the lease agreement evidence the intent by the parties that the City would not interfere with the transportation function of PATCO, except as necessary in pursuit of its essential, municipal purposes. The City should only be liable for damages when it actively pursues its municipal duties, *i.e.*, the avoidance and correction of flooding, the suppression of fire, or the apprehension of a criminal, onto the leased premises.

I believe the majority has mischaracterized the intent of the indemnities agreement between the parties. The City simply reasserted its responsibility to police within its own geographical jurisdiction. This valid, in fact required, assumption does not constitute a waiver by the City of its immunity for injuries occurring within an area where a separate public corporate entity is lawfully conducting its business.

---

CONCURRING OPINION BY JUDGE BARRY:

I agree with that portion of the analysis of the majority opinion which holds that the City may be liable because of the lease agreement to which the City and PATCO were signatories. Accordingly, I join that portion of the majority opinion which requires a remand on this issue.

I disagree, however, with the majority's interpretation and rejection of the reasoning utilized by Judge ROGERS in *Johnson v. Southeastern Pennsylvania Transportation Authority,* 91 Pa. Commonwealth Ct. 587, 498 A.2d 22 (1985). That case does not hold, in my opinion, contrary to the majority's finding, that appropriate pleading of a common law cause of action under Section 344 of the *Restatement (Second) of Torts* suffices to fit within the limited waiver of immunity contained in 42 Pa. C. S. §8542(b)(3). Although not explicit, Judge ROGERS' opinion holds that the failure to adequately police the real property, *when the City has notice that the real property is an area where business invitees are being regularly assaulted and molested,* falls within the waiver of immunity for the "care, custody and control of real property in the possession of the political subdivision." *Id.*

I can find no case other than *Johnson* decided in the context of the real property exception to either sovereign or governmental immunity where the specific

allegation was made that the property in question was the scene of repeated criminal activity. In *Casey v. Geiger*, 346 Pa. Superior Ct. 279, 499 A.2d 606 (1985), the Superior Court held that the political subdivision was not liable for failing to police a park where a ten year old girl was sexually assaulted. There, however, the only allegation relevant for our present purposes, was that the park had been the scene of *one other rape some months before*. This is hardly the type of repeated criminal activity that was alleged in *Johnson*. For this reason, I believe all of those cases rejecting the applicability of the real property exception under the Judicial Code are distinguishable. *Vann v. Board of Education of the School District of Philadelphia*, 76 Pa. Commonwealth Ct. 604, 464 A.2d 684 (1983), for example, was decided on the basis that an attack on a minor on school property was not foreseeable. *Joner v. Board of Education of the School District of Philadelphia*, 91 Pa. Commonwealth Ct. 142, 496 A.2d 1288 (1985), also was decided on the basis of non-foreseeability. *Ziccardi v. School District of Philadelphia*, 91 Pa. Commonwealth Ct. 595, 498 A.2d 452 (1985), involved an unanticipated shooting of a student on the steps of a school building.

Interestingly, the majority opinion states that a political subdivision can be liable where the condition of the property is such that criminals can "nest" on that property, presumably invoking the concurring opinion of Judge DOYLE in *Johnson*. The majority thus recognizes that criminal activity can, in limited circumstances, constitute a defect in the real estate. I can see no distinction between the "nesting" situation that may be present here and that alleged in *Johnson*. "Nests" of criminals need only frequent the property and not live on it. Nor do I believe that a political subdivision is liable for all criminal attacks occurring on its property. Such liability should attach only where the political

subdivision has notice that the property is the scene of repeated criminal activity directed against business invitees.

A review of the pleadings shows that no such allegation was made in this case. Since the complaint against the City was dismissed on a motion for judgment on the pleadings and because of our liberal rules concerning amendments of pleadings, I would permit the pleadings to be amended to allege, if warranted, the necessary facts. This amendment should be allowed in particular in this case since this area of the law is still unsettled.