## Cheronis v. SEPTA

*S.G. Litvin,* for plaintiff.

*Armando Pandola,* for defendant City of Philadelphia.

*Joseph R. Livesey,* for defendant SEPTA.

GOODHEART, *J.,* June 8, 1989 — This is the last vestige of litigation arising from a grievously unfortunate incident that occurred on March 3, 1980, in the nether reaches of Philadelphia's Suburban Station. On that date, plaintiff's incompetent, Mary Brown[1] was violently assaulted, raped, and left for dead in the catacomb-like tunnels beneath the station platforms.

Suit was instituted in August 1980, against SEPTA[2] and Conrail, which at the time operated the local commuter trains under contract from SEPTA. In December 1980, SEPTA and Conrail filed a third-party complaint against the City of Philadelphia, the Commonwealth of Pennsylvania, Wendell

---

1. A pseudonym.
2. The local transportation authority.

Long,[3] and the members of the Pennsylvania Board of Probation and Parole,[4] claiming that these additional defendants were solely, jointly or severally liable to plaintiff, or, alternatively, liable over to them (SEPTA and Conrail) for any recovery by plaintiff.

In the fall of 1981, plaintiff reached a settlement with the original defendants, and plaintiff is no longer an active party to this matter.

On December 4, 1981,[5] this court granted the commonwealth and the Parole Board members judgment on the pleadings, on the basis that they were immune from this suit. This order was affirmed.[6] The sole remaining issue in this case is whether or not the City of Philadelphia is liable over to SEPTA, in whole or in part, pursuant to a contract under which the city provided police services to SEPTA for an agreed-upon sum per year.

This question was framed as a motion for summary judgment by the City of Philadelphia. Briefs were submitted, and oral argument was held,[7] after which this court granted the city's motion, dismissing all claims against the city with prejudice.[8]

It is conceded by counsel that the city is immune from tort liability in the instant suit. The Municipal Subdivision Tort Claims Act (42 Pa.C.S. §8541 et seq.) bars tort recovery against defendants such as the city unless the claim falls within one of several exceptions contained in the act. The only exception that could possibly apply is the "real-estate" excep-

---

3. The alleged perpetrator of this attack.

4. Fred W. Jacobs, Paul Descano, John Jefferson, Verdell Dean and William Forbes.

5. Followed by a procedural morass not here relevant.

6. *Cheronis v. SEPTA,* 114 Pa. Commw. 412, 539 A.2d 15 (1988).

7. On March 13, 1989.

8. March 14, 1989.

tion (42 Pa.C.S. §8542(b)(3)). Under *Mascaro v. Youth Study Center,* 89 Pa. Commw. 388, 492 A.2d 786 (1985), the city cannot be held liable under the real-estate exception for criminal acts of third parties committed on city property.

Therefore, the only issue before this court is whether the city can be liable under a written contract in a situation where it is immune from recovery in tort. This question was answered in the affirmative in *Ludwin v. Port Authority Transit Corporation,* 102 Pa. Commw. 36, 517 A.2d 1006 (1986). In *Ludwin,* the plaintiff brought suit against PATCO, SEPTA and the City of Philadelphia, for injuries suffered as the result of a criminal assault in the subway concourse at Eighth and Market Streets in Philadelphia.[9] The city pleaded immunity and moved for judgment on the pleadings. The trial court granted the city's motion and PATCO appealed.

Commonwealth Court (per MacPhail, *J.*) reversed and remanded, holding that the city could waive its immunity through the terms of a contract it signed (here, a lease agreement), and that it apparently had done so. Commonwealth Court cited the following language from the lease agreement:

"10.B. Unless the following shall be proximately caused by the negligence of PATCO's employees, agents, operators, lessees or concessionaires, city agrees to defend, indemnify, and hold PATCO harmless from . . . all claims, actions, suits, judgments, liability, damages, losses and expenses . . . with respect to any injury or death of any person . . . resulting: . . .

9. PATCO cross-claimed against the city, on the basis of an agreement between them.

"(4) from any cause or causes *growing out of crime,* riot, disorder, fire, flood, or bursting or leaking water mains, gas mains or sewers." 102 Pa. Commw. at 41-2, 517 A.2d at 1009. (emphasis supplied)

By way of contrast, the relevant language in SEPTA'S contract with the city is much more limited in scope:

"(9) The city agrees to indemnify and hold harmless SEPTA, its officers, agents or employees against liability for bodily injury or property damage *arising out of any act or omission by the city* or any of its officers, agents, employees utilized by the city to perform its obligations under this agreement." Agreement in record at 3-4. (emphasis supplied)

Unlike the agreement in *Ludwin,* this contract speaks only of indemnification in cases where *the city's employees* (that is, the police officers provided pursuant to the contract) actually cause an injury, either through action, or through inaction.

Mary Brown's injuries were the result of an attack by a third party, clearly not an "act" of a city employee as contemplated by the contract. On the other hand, the failure of the city police officers to prevent this horrible incident cannot be characterized as an "omission" within the terms of this agreement.

A city's duty to provide police protection is a public one. Absent a "special relationship" between an individual and the city, there can be no liability in tort for a city's alleged failure to prevent a specific assault. The mere fact that the city might have been aware that a particular location was dangerous but did nothing about it is insufficient to establish this "special relationship," and the city cannot be held

liable. *Chapman v. City of Philadelphia, SEPTA, and Conrail,* 290 Pa. Super. 281, 285, 434 A.2d 753, 754-5 (1981).

A "special relationship" exists only where an individual is exposed to a special danger and the authorities have undertaken the responsibility to provide him adequate protection. *Chapman, supra.* In the instant case, plaintiff was subject only to the same hazards that any other commuter faced. This is not a special relationship, and creates no special duty of protection. Accordingly, the failure of the city to prevent this attack is not a breach of its duty of care to Mary Brown, and, therefore, we cannot find that Mary Brown's injuries were caused by an "omission" on the part of the city.

It is for the foregoing reasons that this court granted the City of Philadelphia summary judgment, by its order dated March 14, 1989.