Joseph Davis & Margaret Davis, Administrators of the Estate of Loren Davis, Deceased, Appellants *v.* School District of Philadelphia and Holiday Inn, Inc. and Richard Donahue and James Slaughter, Appellees.

Joseph Davis & Margaret Davis, Administrators of the Estate of Loren Davis, Deceased, Appellants *v.* Holiday Inns, Inc., (Formerly Designated as Holiday Inns of America, Inc.), et al., Appellees.

Argued June 4, 1985, before Judges ROGERS, BARRY and PALLADINO, sitting as a panel of three.

· *Lawrence D. Finney*, with him, *Michael Coren* and *Yale F. Ediken, Krimsky, Levy, Angstreich & Finney, P.C.*, for appellants.

*Andrew M. Rosen*, with him, *Sally Akan*, for appellee, School District of Philadelphia.

*Wendy M. Johnston Bracaglia*, with her, *John W. Walter* and *Charles W. Craven, Marshall, Dennehey, Warner, Coleman and Goggin*, for appellees, Holiday Inns, Inc.

OPINION BY JUDGE ROGERS, August 9, 1985:

Joseph and Margaret Davis, whom we will refer to as plaintiffs, for themselves and as the administrators of the estate of their late son, Loren Davis, brought a wrongful death action and a survival action against the School District of Philadelphia (school district) and Holiday Inns, Inc. on account of their son's death. The plaintiffs here appeal from a judgment on the pleadings entered by the Court of Common Pleas of Philadelphia County upon the school district's immu-

nity from damages on account of injuries caused by its acts or omissions conferred by the Political Subdivision Tort Claims Act (Act).[1]

The plaintiffs alleged in their complaint that their son was enrolled at a junior high school of the school district; that he participated in a school trip to Virginia; that he and others on the trip were to stay at a Holiday Inn in Richmond, Virginia, during the night on May 24, 1980; that their son sustained injuries when he drowned while swimming in the pool at the Holiday Inn; that on June 21, 1980, their son died as a result of injuries suffered on May 24, 1980; and that negligent acts or omissions of the school district or its employees caused their son's injuries and death. The plaintiffs also alleged that the hotel pool was under the management, supervision, and control of the school district at the time their son was injured.

By Answer, the school district denied the plaintiffs' allegations of negligence and in New Matter invoked the affirmative defense of governmental immunity conferred by the Act.

By Reply, the plaintiffs plead that the defense advanced by the school district based on the Act stated a conclusion of law requiring no reply.

The trial judge concluded that the law of Pennsylvania, rather than that of Virginia, was applicable and that the school district was not liable for damages on account of the decedent's injuries by dictate of Section 201 of the Act.

---

[1] The Political Subdivision Tort Claims Act (Act), Act of November 26, 1978, P.L. 1399, as amended, 53 P.S. §§5311.101—5311.803, was repealed by the Act of October 5, 1980, P.L. 693 and sections of the Act which are relevant to this appeal were recodified with little substantive change in Sections 8541 and 8542 of the Judicial Code, 42 Pa. C. S. §§8541, 8542. Since the incident which gave rise to this action occurred before the effective date of the repealer, the terms of the Act control the disposition of this matter.

The plaintiffs contend first that the trial court should have applied Virginia law, which does not include a provision for governmental immunity. The plaintiffs thus invoke the traditional rule that in tort actions the law of the place of injury applies. In *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court abandoned the traditional rule and approved in its stead then Section 379 of Tentative Draft No. 8 of the Restatement (Second) Conflict of Laws, now Section 145 of the Restatement (Second) Conflict of Laws (1971), providing that the "rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ," with specific reference to the following contacts:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any between the parties is centered.

In *Griffith,* a person domiciled in Pennsylvania was killed in a plane crash in Colorado, and his estate sued for damages in Pennsylvania under Pennsylvania's survival statute. The Supreme Court held that Pennsylvania law should apply because the decedent had purchased his plane ticket in Pennsylvania, the trip began and was scheduled to end in Pennsylvania, Pennsylvania had the greater interest in the well-being of the decedent's next of kin, and Colorado's relation to the accident was simply that the accident

occurred there. Mr. Justice, late Chief Justice, Rob-
erts wrote:

The state in which injury occurred, as such,
has relatively little interest in the measure of
damages to be recovered unless it can be said
with reasonable certainty that defendant acted
in reliance on that state's rule. Moreover,
where the tort is unintentional, the reliance
argument is almost totally untenable. . . . This
is abundantly clear in the present case; the site
of the accident was purely fortuitous. (Cita-
tion omitted.)

416 Pa. at 23-24, 203 A.2d at 806.

In the case at hand most of the background facts
are related to Pennsylvania; as in *Griffith,* the only
relationship with the place of the accident is that the
injury occurred there. Accordingly, we conclude that
the trial court correctly looked to Pennsylvania law.

The Pennsylvania law is Section 201 of the Act,
which provides that, subject to exceptions, a political
subdivision shall not be liable for damages on account
of any injury to a person or property caused by an
act or omission of the political subdivision or its em-
ployees. The eight exceptions to immunity are found
at Section 202(b) of the Act, 53 P.S. §5311.202(b). To
surmount the bar to liability by recourse to the excep-
tions, the plaintiff must, pursuant to Section 202(a)
(1) and (2), satisfy the conditions that his injuries
occurred as the result of acts for which damages would
be recoverable under common law or a statute creat-
ing a cause of action and that his injuries were caused
by negligent acts of the local agency or its employees
acting within the scope of their duties with respect to
one of the categories of waiver.

The plaintiffs first contend that the Act "should
not be applied because a state cannot immunize itself

or its political subdivisions for acts committed outside its boundaries," asserting that *Nevada v. Hall,* 440 U.S. 410 (1979), *reh'g denied,* 441 U.S. 917, is authority for the proposition that Pennsylvania's immunity statute may not be applied to immunize the school district for an act which occurred in another state. This argument is ineffective. Indeed, in *Hall,* the Supreme Court held that the Full Faith and Credit Clause of the United States Constitution did not require a California court to apply a Nevada immunity statute in a suit by California residents against the State of Nevada for injuries sustained in California in an accident with a vehicle owned by the State of Nevada. The present case is quite different. The question here is merely that of which tort law should apply to this suit between Pennsylvanians concerning injuries sustained by the plaintiffs in Virginia—the law of Pennsylvania, which includes an immunity statute, or that of Virginia, which does not. As we have seen, the Pennsylvania law of conflicts requires the application of Pennsylvania's tort law. Moreover, we observe that Section 102 of the Act, 53 P.S. §5311.102, defines "[e]mployee of a political subdivision" as follows:

> Any person who is acting or who has acted on behalf of a political subdivision whether on a permanent or temporary basis, whether compensated or not and whether within *or without the territorial boundaries of the political subdivision.* . . . (Emphasis supplied.)

The plaintiffs next argue that the Act does not bar recovery in this case, invoking the real estate exception, Section 202(b)(3), 53 P.S. §5311.202(b)(3), which states:

> (b)  Actions or activities which may impose liability.—The following acts or activities by a political subdivision or any of its employees

may result in the imposition of liability on a political subdivision:

. . . .

(3) The care, custody or control of real property in the possession of the political subdivision. . . .

The plaintiffs' averments of negligence on the part of the school district were as follows:

A. School District of Philadelphia.

(1) Planning, organizing and/or directing a school trip which was unsafe and thereby presented an unreasonable risk of harm to plaintiffs' decedent;

(2) Failing to warn and/or disclose to plaintiffs' decedent or to his parents, the plaintiffs herein, all potential dangers and risks of harm which would be presented to said decedent;

(3) Failing to properly and adequately supervise plaintiffs' decedent, Loren Davis and all other participants during said trip;

(4) Failing to ascertain whether plaintiffs' decedent was able to swim;

(5) Permitting plaintiffs' decedent, Loren Davis, to enter into the swimming pool area and use the swimming pool without proper and adequate supervision;

(6) Failing to make said swimming pool safe for plaintiffs' decedent's use;

(7) Failing to have lifeguards or other qualified personnel present at the swimming pool area while it was in use by plaintiffs' decedent;

(8) Failing to provide proper and/or adequate supervision and lifeguard and safety

measures within the said swimming pool and/or swimming area;

(9) Permitting plaintiffs' decedent Loren Davis to use the swimming pool and/or swimming area without proper adequate lighting conditions;

(10) Failing to properly rescue plaintiffs' decedent when decedent was drowning in defendant, Holiday Inn's swimming pool;

(11) Failing to rescue plaintiffs' decedent when decedent was drowning in defendant's swimming pool within a reasonable time;

(12) Failing to protect plaintiffs' decedent, Loren Davis, from an unreasonable risk of harm;

(13) Failing to exercise reasonable care to prevent further harm to plaintiffs' decedent after he was rescued;

(14) Failing to exercise reasonable care to secure plaintiffs' decedent's safety while said decedent was under the supervision and control of defendant, School District of Philadelphia;

(15) Discontinuing aid and/or protection to plaintiffs' decedent;

(16) Failing to provide plaintiffs' decedent with proper and adequate first aid and/or medical care;

(17) Failing to exercise due care under the circumstances;

(18) Being negligent as a matter of law;

(19) Being otherwise negligent under the circumstances.

The gravamen of the complaint is that the school district negligently failed to supervise the decedent's activities. The only mention of the physical condition

of the real property is in the ninth subparagraph stating that the school district permitted their son to use the swimming pool "without proper and adequate lighting conditions"; but this charge, as all the others, is that the school district failed in its duty to supervise their son's activities. The school district is granted immunity from damages for its failure properly to supervise the activities of students by Section 201 of the Act. In *Wimbish v. School District of Penn Hills,* 59 Pa. Commonwealth Ct. 620, 430 A.2d 710 (1981), where a student was hurt in a football game and allegedly not given prompt medical attention, we rejected the assertion that the real property exception would apply to waive the school district's immunity, writing that:

> The averments in the appellant's complaint clearly indicate that the gravamen of his action was the alleged negligence of district employees within respect to an *activity* on district premises. . . . There is no indication whatever that the district was negligent in the care, custody or control of the property. . . .

59 Pa. Commonwealth Ct. at 626, 430 A.2d at 713. We stated in *Robson v. Penn Hills School District,* 63 Pa. Commonwealth Ct. 250, 253-254, 437 A.2d 1273, 1275 (1981), "that it would be a total distortion of the language of Section 202(b)(3) to allow the supervision, or lack of supervision, of school children to fall within the scope of care, custody and control of real property." The legislative grant of immunity bars the plaintiffs' claims against the school district.

Judgment affirmed.

### Order

And Now, this 9th day of August, 1985, the judgment of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.