520 A.2d 122

Daniel Rhoads and Mary Rhoads, Appellants *v.* Lancaster Parking Authority and City of Lancaster, Appellees.

Argued September 11, 1986, before Judges DOYLE and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*William P. Murphy*, with him, *James E. Beasley* and *Scott A. Bennett, Beasley, Hewson, Casey, Colleran, Erbstein & Thistle,* for appellants.

*Allan C. Molotsky*, with him, *Albert J. Schell, Jr., Post & Schell, P.C.,* for appellees.

OPINION BY JUDGE DOYLE, January 22, 1987:

This is an appeal by Daniel Rhoads and Mary Rhoads from two orders of the Court of Common Pleas of Lancaster County granting summary judgment to Appellees, Lancaster Parking Authority and the City of Lancaster. We affirm.

In late 1966 and early 1967, the Lancaster Parking Authority (Authority) was organized pursuant to the Parking Authority Law.[1] The Authority owns the Prince Street Parking Garage in Lancaster, Pennsylvania, which it leases to the City of Lancaster (City) and in turn, staffs and operates the garage pursuant to a management contract with the City. It is alleged that on September 11, 1981 at around 2:30 in the afternoon, three shabbily dressed, intoxicated men walked up the driving ramp into the parking garage. They were no-

---

[1] Act of June 5, 1947, P.L. 458, *as amended,* 53 P.S. §§341-356.

ticed by James Bandy, one of the garage attendants. He yelled at them not to walk up the automobile ramp. The men responded with obscenities and continued on their way. Mr. Bandy informed James Painter, the garage manager, of the presence of the three men. Mr. Painter looked up the ramp for the men, saw nothing, and returned to the ticket booth at the garage's exit.

Shortly, thereafter, between 2:40 p.m. and 2:42 p.m., Mr. Rhoads drove his vehicle into the parking garage, received his parking ticket and proceeded to the fifth level of the garage. At about this time, a patron of the garage reported to Mr. Bandy and Mr. Painter that three men were on the fifth level of the garage causing a disturbance. As Mr. Rhoads parked his car, he was accosted by the three men who forced Mr. Rhoads into the back seat of his vehicle. Two of the assailants held him down, while the third occupied the driver's seat. Meanwhile, Mr. Painter proceeded by elevator to the fifth level to investigate the disturbance. He found nothing because the assailants were driving the Rhoads' car out of the garage.

While leaving the garage in Mr. Rhoads' automobile, the assailants hit a concrete barrier. They handed Mr. Rhoads' parking ticket to Mr. Bandy. At this time, Mr. Bandy noticed two people in the back of the Rhoads' vehicle wrestling and "carrying on." Mr. Rhoads' vehicle left the garage at 2:46, four minutes after it had entered. At no time did Mr. Bandy hit the "panic button" located in his ticket booth to summon the police. Subsequently, Mr. Rhoads was blindfolded, bound, and then repeatedly beaten and stabbed by the three assailants. Mr. Rhoads was eventually thrown down a 50-foot embankment and left for dead. His vehicle was later found in the Richmond, Virginia area. In the three years prior to the Rhoads incident, there had been some petty vandalism and car burglaries in the garage but no assaults or any other violent crimes on the premises.

Appellants filed their complaint on June 1, 1982, alleging that the City and the Authority jointly or severally owned, possessed, maintained or controlled the Prince Street Garage; that Mr. Rhoads was a business invitee of the Appellees; that Appellees had notice of criminal activity in the garage and this assault in particular; and that Appellees negligently failed to provide adequate security for its patrons on its premises.

After extensive discovery, the trial court granted summary judgment on September 13, 1984 in favor of the City, on the ground that it had governmental immunity, and could not be sued under the "real property" exception of Section 8542(b)(3) of the Judicial Code (Code)[2] because it had relinquished the care, custody and control of the garage to the Authority. On September 24, 1984, the trial court granted summary judgment in favor of the Authority on the grounds that it was a local agency and the criminal assault upon Daniel Rhoads by third parties on the Authority's premises also did not fall within the "real property" exception to governmental immunity.

Appellants appealed both orders to the Superior Court of Pennsylvania, which transferred the cases to this Court. Appellants present three issues for our consideration on appeal: (1) whether the Authority is a local agency under Section 8541 of the Code[3] and therefore entitled to immunity, (2) whether the proprietary function exception to common law governmental immunity survived the statutory enactment of governmental immunity;[4] and (3) whether Appellants' action falls within the "real property" exception to governmental immunity.

---

[2] 42 Pa. C. S. §8542(b)(3).

[3] 42 Pa. C. S. §8541.

[4] Subchapter C of Chapter 85 of the Judicial Code, 42 Pa. C. S. §§8541-8564.

## The Authority as a Local Agency

Section 8541 of the Code provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or of any other person." "Local agency" is defined in Section 8501 of the Code[5] as "[a] government unit other than the Commonwealth government. This term includes an intermediate unit." Since "government unit" is not defined in Chapter 85[6] (the chapter of the Code dealing with sovereign and governmental immunity), we turn to Section 102, the general definitional section of the Code, for guidance.[7] A "governmental unit" is defined there in relevant part as "[t]he General Assembly and its officers and agencies, [and] any *government agency.* . . ." Section 102 further defines "Government agency" as "[a]ny Commonwealth agency or any political subdivision or *municipal or other local authority.* . . ." Reading these definitions *in pari materia,* it is clear that the Authority is a local authority under Section 102, and hence a "local agency" under Section 8541.

---

[5] 42 Pa. C. S. §8501.

[6] 42 Pa. C. S. §§8501-8564.

[7] 42 Pa. C. S. §102. Appellants seem to contend that we may not turn to any definitional section outside of Chapter 85 to define terms contained in Chapter 85, even if the terms are not defined in that Chapter. Section 102 clearly provides that:

> [s]ubject to additional definitions contained in subsequent provisions of this title, the following words and phrases when used *in this title* shall have unless the context indicates otherwise, the meanings given to them in this section. (Emphasis added).

Since neither "government unit" nor "government agency" is defined in Chapter 85, the definitions contained in Section 102 control the meaning of these terms.

This conclusion is in accord with *E-Z Parks, Inc. v. Larson,* 91 Pa. Commonwealth Ct. 600, 498 A.2d 1364 (1985), *aff'd per curiam,* 509 Pa. 496, 503 A.2d 931 (1986), where the issue was the alleged tortious interference with a lease, and wherein we stated that parking authorities are local agencies for the purposes of Section 8541 of the Code. In *E-Z Parks,* we wrote that parking authorities, which are public bodies, corporate and politic that exercise public power as an agent of the Commonwealth, clearly meet the definition of a local agency in Section 8501. *Id.* at 609, 498 A.2d at 1369.

Appellants strongly urge that parking authorities do not come within the definition of "local agency" set forth in Section 8501 of the Code, that is, "[a] government unit other than the Commonwealth government," and present two arguments in support of this contention. First, they argue that when the Code was enacted in 1980, which enactment included the definition of "local agency," the legislature intended to exclude municipal authorities from the definition. Their argument is that the previous statutory governmental immunity law, *viz,* the Political Subdivision Tort Claims Act,[8] *specifically* listed municipal authorities as a governmental body; more specifically, a political subdivision entitled to immunity, whereas the definition of "local agency" in Section 8501 of the Code specifically lists *only* intermediate units as immune. Therefore, they argue, the legislature intended to exclude municipal authorities from the definition of "local agency," and assert that the failure to specify municipal authorities in the present statute means that such bodies should be excluded from the cloak of immunity. We cannot agree.

---

[8] Act of November 26, 1978, P.L. 1399, repealed by Section 333 of the Act of October 5, 1980, P.L. 693, *formerly* 53 P.S. §§5311.01-5311.803.

To adopt Appellants' argument would give immunity *only* to intermediate units and to *no* other governmental unit, because *all* the other government units enumerated in the prior statute (except intermediate units) such as, *e.g.,* a county, city, borough, township, and school district, would be excluded. Appellants' argument ignores the fact that when interpreting statutes, all of their terms must be given effect. *See* Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(a). The phrase "government unit other than the Commonwealth government" as used in the definition of "local agency" in Section 8501 of the Code has a broad meaning. The sentence which follows that phrase, "[t]his term shall include an intermediate unit" does not necessarily limit in any way or exclude in this instance any other governmental body from the terms of the previous sentence, but merely states for purposes of clarity and to avoid uncertainty that an intermediate unit is to be included within its terms. Since we do not believe that the legislature could have intended the irrational result which would occur were we to adopt Appellant's proffered reading of the statutes, we must reject their argument. *Unionville-Chadds Ford School District v. Rotteveel,* 87 Pa. Commonwealth Ct. 334, 487 A.2d 109 (1985).

Appellants in their second alternative argument stress that municipal authorities have a unique status in the Commonwealth's governmental scheme which justifies their noninclusion in the definition of "local agency" in Section 8501. They contend that since municipal authorities are not part of the "Commonwealth government" by definition in Section 102 of the Code,[9] nor are

---

[9] The term "Commonwealth government" is defined in Section 102 of the Code, 42 Pa. C. S. §102, as:

The government of the Commonwealth, including courts and other officers or agencies of the unified judicial sys-

they creatures, agents or instrumentalities of the municipalities which create them, *Simon Appeal,* 408 Pa. 464, 184 A.2d 695 (1962), they must be somewhere in between, and are *neither* the "Commonwealth government" *nor* a "local agency." We cannot agree; they have not "slipped between the cracks" as it were, although Appellants have presented a strong argument. Municipal authorities *are* independent corporate agents of the Commonwealth which exercise *governmental,* as well as private corporate power, in assisting the Commonwealth in meeting the needs of its citizens. *Id.* Additionally, such authorities must be separate and distinct entities from the municipalities which form them for reasons of public policy and convenience. *Lighton v. Abington Township,* 336 Pa. 345, 9 A.2d 609 (1939). But the reason for making municipal authorities distinct entities from the municipalities which form them is the legislature's intent not to violate Article 3, Section 3 of the Pennsylvania Constitution prohibiting the delegation of certain powers (such as the power to make and supervise municipal improvements, to levy taxes, or to perform municipal function) to any special commission, private corporation or association, and to allow municipalities to join together to reap the benefits of economics of scale in the financing, construction and operation of large scale public works projects. *See Tranter v. Allegheny County Authority,* 316 Pa. 65, 173 A. 289 (1934); *Graffigna v. City of Philadelphia,* 98 Pa. Commonwealth Ct. 624, 512 A.2d 91 (1986). There would be no

---

tem, the General Assembly and its officers and agencies, the Governor, and the departments, boards, commissions, authorities and officers and agencies of the Commonwealth, *but the term does not include any* political subdivision, *municipal or other local authority, or any officer or agency of any such* political subdivision or *local authority.* (Emphasis added.)

such public policy reason, however, to exclude municipal authorities from the penumbra of immunity granted to local municipalities and hence, under the sovereign and governmental immunity scheme contained in Chapter 85 of the Code, they are to be considered local agencies.[10] To the contrary, the public policy of this Commonwealth is as enunciated by our Supreme Court in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973) and *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978). We thus decline to adopt Appellants' alternative second argument that the phrase "government unit other than the Commonwealth government" in Section

---

[10] In *Graffigna v. City of Philadelphia*, 98 Pa. Commonwealth Ct. 624, 512 A.2d 91 (1986), we held that the Southeastern Pennsylvania Transportation Authority (SEPTA) was entitled to notice of an injury under §5522 of the Judicial Code, 42 Pa. C. S. §5522, because it was a *"local authority"*, despite its enabling statute which stated that the authority "shall in no way be deemed to be an instrumentality of any city or county or other municipality or engaged in the performance of a municipal function. . . ." *Id*. at 628, 512 A.2d at 93. We note our Supreme Court's recent decision in *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (1986) held that SEPTA was a Commonwealth agency and *not* a local authority. Although the statute which enumerates the power of SEPTA, *see* Section 303 of the Pennsylvania Urban Mass Transportation Law, Act of January 22, 1968, P.L. 42, *as amended*, 55 P.S. §600.303(a) is very similar to the language used in Section 5(a) of the Parking Authority Law, 53 P.S. §345(a), we need not reach the issue of "local agency vs. commonwealth agency" because of the Supreme Court's decision in *E-Z Parks, Inc. v. Larson*, 509 Pa. 946, 503 A.2d 931 (1986), *aff'g per curiam*, 91 Pa. Commonwealth Ct. 600, 498 A.2d 1364 (1985), where it was held that parking authorities were *local agencies* for the purposes of Sections 8501 and 8541 of the Code, 42 Pa. C. S. §§8501, 8541. But even if the parking authority was held to be a Commonwealth agency in this case, its liability in this situation would not change in any respect.

8501 of the Code is so limited as to include only municipalities and their agents.

## PROPRIETARY FUNCTION EXCEPTION TO GOVERNMENTAL IMMUNITY

Appellants further maintain that the proprietary function exception to common law governmental immunity survived the passage of the current statutory governmental immunity act, thereby stripping the Authority of its immunity in this case. We need not decide this issue as this particular theory was neither briefed nor argued before the trial court, and consequently it has been waived. *Richardson v. LaBuz,* 81 Pa. Commonwealth Ct. 436, 446 n. 5, 474 A.2d 1181, 1190 n. 5 (1984); *Kemp v. Qualls,* 326 Pa. Superior Ct. 319, 473 A.2d 1369 (1984); Pa. R.A.P. 302(a). We do note in passing, however, that our recent decision in *Davies v. Barnes,* 94 Pa. Commonwealth Ct. 145, 503 A.2d 93 (1986) would be dispositive of the issue.

## THE REAL PROPERTY EXCEPTION TO GOVERNMENTAL IMMUNITY

We next turn to the pivotal issue of whether Appellants' claim is barred by Section 8541 of the Code, which pertinently provides:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

This immunity does not apply if Appellants' cause of action falls within the exception found in Section 8542(b)(3), which states:

> (b) *Acts which may impose liability.*—The following acts by a local agency or any of its em

ployees may result in the imposition of liability on a local agency:

. . . .

(3) *Real Property.*—The care, custody or control of real property in the possession of the local agency. . . .

Appellants seem to contend that the mere possession of real property by a local agency when the person injured is a business invitee of the local agency is sufficient to hold the local agency liable. We do not agree. In order to recover Appellants must meet *two* distinct requirements. First, they must show that they possess a cause of action cognizable at common law; a requirement they seem to have clearly met because they have throughout maintained that their suit is based on Section 344 of the Restatement (Second) of Torts (1965). Section 344 provides that:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts §344 (1965). This Section was adopted as part of the common law of this state in *Moran v. Valley Forge Drive-In Theater,* 431 Pa. 432, 246 A.2d 875 (1968). *See also Murphy v. Penn Fruit Co.,* 274 Pa. Superior Ct. 427, 418 A.2d 480 (1980).

We then pass to the second, distinct, and more difficult requirement: whether Appellants' cause of action

falls within the exception to immunity found in Section 8542(b)(3) of the Code, where the cause of plaintiff's injury was the governmental body's negligence in the *care, custody or control of real estate*. *Lewis v. Hatboro-Horsham School District*, 77 Pa. Commonwealth Ct. 287, 465 A.2d 1090 (1983). Succinctly, in order to defeat the immunity bar a plaintiff must show that his injury was caused in some manner by some unsafe condition of the governmental body's real estate. *Mooney v. North Penn School District*, 90 Pa. Commonwealth Ct. 7, 493 A.2d 795 (1985).

Our appellate courts have found the exception to apply in different circumstances illustrated by the following cases: *Singer v. School District of Philadelphia*, 99 Pa. Commonwealth Ct. 553, 513 A.2d 1108 (1986) (failure of school district to provide proper matting for gym floor when vaulting horse was used in gym); *Mascaro v. Youth Study Center*, 89 Pa. Commonwealth Ct. 388, 492 A.2d 786 (1985) (alleged failure to maintain adequate lighting and negligent maintenance of fence and locks at juvenile detention facility); *Bersani v. School District of Philadelphia*, 310 Pa. Superior Ct. 1, 456 A.2d 151 (1982) (design or creation of dangerous condition by placing backstop too close to home plate to play softball safely); *see also Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977) where our Supreme Court held that when a property owner allows the condition of his property itself to deteriorate to such an extent that it affords a third person an opportunity to commit a crime or tort, the property owner may be held liable.[11]

---

[11] *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977) was decided between our Supreme Court's abolition of governmental immunity in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973) and the passage of the first governmental immunity act in 1978. Although *Ford* was not a case involving governmental immunity, we note this Court's recent decision in

Appellants have not shown such circumstances in the instant case. Appellants argue that the Authority has a duty to control persons on the premises. Their claim in this regard, however, is basically one alleging negligent supervision of persons on the property of the governmental body, and while this principle of law is germane to Section 344 of the Restatement and relevant in establishing a common law cause of action, on numerous occasions we have held that negligent control or supervision of persons or activities on a governmental unit's real estate does not come within the real property exception to governmental immunity. *Johnson v. City of Philadelphia*, 93 Pa. Commonwealth Ct. 87, 500 A.2d 520 (1985) (failure of city to supervise persons who entered indoor basketball facility and assaulted plaintiff); *Auerback v. Council Rock School District*, 74 Pa. Commonwealth Ct. 507, 459 A.2d 1376 (1983) (failure of school district to monitor and keep separate two students involved in a series of past altercations); *Close v. Voorhees*, 67 Pa. Commonwealth Ct. 205, 446 A.2d 728 (1982) (student injured during altercation between students when teacher was absent); *Robson v. Penn Hills School District*, 63 Pa. Commonwealth Ct. 250, 437 A.2d 1273 (1981) (student injured by pencil thrown by classmate while teacher was out of room). The situation here is similar to that in *Johnson, Auerbach, Close,* and *Robson,* and the result here is no different.[12] Therefore, judgment was properly entered against Appellants.

---

*Ludwin v. Delaware River Port Authority,* 102 Pa. Commonwealth Ct. 36, 517 A.2d 1006 (1986), which accepted *Ford* as stating a cause of action under the current immunity statute.

[12] *See also Frank v. Southeastern Pennsylvania Transportation Authority,* 96 Pa. Commonwealth Ct. 221, 506 A.2d 1015 (1986) (failure to supervise activities of decedent who jumped from roof of elevated train platform onto train and was killed); *Fizzano v. Bor-*

Appellants further argue that our decision in *Vann v. Board of Education of the School District of Philadelphia,* 76 Pa. Commonwealth Ct. 604, 464 A.2d 684 (1983) is controlling because in *Vann* we stated that:

Section [8542] must be read as a narrow exception to a general legislative grant of immunity and we construe it to impose liability only for negligence which makes government-owned

*ough of Ridley Park,* 94 Pa. Commonwealth Ct. 179, 503 A.2d 57 (1986) (failure to supervise children playing hockey on frozen borough lake which resulted in plaintiff getting struck by hockey puck); *Davies v. Barnes,* 94 Pa. Commonwealth Ct. 145, 503 A.2d 93 (1986) (failure to supervise students who took car out of school auto shop on "joy ride" resulting in the death of one of the students); *Messina v. Blairsville-Saltsburg School District,* 94 Pa. Commonwealth Ct. 100, 503 A.2d 89 (1986) (failure of faculty-advisor of high school cheerleading squad to appear for scheduled practice at which plaintiff was injured); *Acker v. Spangler,* 92 Pa. Commonwealth Ct. 616, 500 A.2d 206 (1985) (failure of school district to supervise school employee who pulled table out from under spectator at high school wrestling tournament); *Ziccardi v. School District of Philadelphia,* 91 Pa. Commonwealth Ct. 595, 498 A.2d 452 (1985) (failure of school district to prevent plaintiff from being assaulted on sidewalk in front of school and shot on steps of school building); *Davis v. School District of Philadelphia,* 91 Pa. Commonwealth Ct. 27, 496 A.2d 903 (1985) (failure to supervise activities of decedent on school trip during which decedent drowned in hotel swimming pool); *Mooney v. North Penn School District,* 90 Pa. Commonwealth Ct. 7, 493 A.2d 795 (1985) (improper supervision by school teacher of activity designed to simulate hostage crisis in Iran where blindfolded student was allowed to fall down steps while being escorted around school building by fellow students); *Usher v. Upper Saint Clair School District,* 87 Pa. Commonwealth Ct. 461, 487 A.2d 1022 (1985) (failure of high school chemistry teacher to supervise and conduct properly chemistry experiment where teacher dropped beaker which splashed flaming fluid on plaintiff's face); *Morris v. Montgomery County Geriatric and Rehabilitation Center,* 74 Pa. Commonwealth Ct. 363, 459 A.2d 919 (1983) (failure of county geriatric center to supervise elderly patient who walked off grounds of center into wooded area and died of exposure).

property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may be reasonably foreseen to be used.

*Vann*, 76 Pa. Commonwealth Ct. at 607-08, 464 A.2d at 686. In *Vann* a minor plaintiff while walking on the sidewalk adjacent to the defendant's school property was assaulted and forceably taken through an unsecured gate in the fence around the school and there further assaulted while on school property. We affirmed the decision of the trial court dismissing the complaint on the grounds of *immunity,* stating that "[v]iolent criminal acts such as occurred here are not a reasonably foreseeable use of school property such that the *exception* will be applied." *Id.* at 608, 464 A.2d at 686. (Emphasis added.) Appellants contend that since Mr. Rhoads was using the garage for its ordinary and regular purpose and that due to the Authority's negligence in controlling the three men who attacked Mr. Rhoads, the property was made unsafe for its intended uses, thereby coming within the real property exception to governmental immunity. Appellants misapprehend the meaning of the above quoted language in *Vann,* language attributable to this *exception* to immunity, with the concept of establishing a common law cause of action. We were very careful to point out in *Vann* that while the clear intent of Section 8542 of the Code was to waive governmental immunity, the statute did not impose a standard of liability greater than that which exists at common law.

In order to fall within the real property exception to governmental immunity (the *second* of the *two* requirements), Appellant must show that his injury was caused by, or attributable to, some unsafe condition or defect in the real property of the local agency. *Mooney,* 90 Pa. Commonwealth Ct. at 9, 493 A.2d at 797. The garage building's physical structure was not made un-

safe by the Authority's negligence in controlling the three men. Even though Mr. Rhoads was using the garage for its regular and intended use when he was attacked, the property *itself* was not unsafe for the purposes intended. Absent here are the allegations of negligent maintenance and design of the real estate found in *Vann,* to which the statement quoted by Appellant is directed. *See Merritt v. Board of Education of the School District of Philadelphia,* 99 Pa. Commonwealth Ct. 178, 513 A.2d 504 (1986). Appellants' reliance on this argument is therefore misplaced.

Appellants suggest that the fact that Mr. Rhoads was a business invitee on the Authority's premises is sufficient to overcome the immunity bar. We do not agree. While the status of Mr. Rhoads on the Authority's property is certainly relevant to the questions of duty and the standard of care under the common law cause of action requirement of Section 8541(a) of the Code, it is not relevant to the question of whether Appellants' cause of action falls within the real property exception to governmental immunity.

Appellants further assert that the criminals "nested" in the garage.[13] *See Johnson v. Southeastern Pennsylvania Transportation Authority,* 91 Pa. Commonwealth Ct. 587, 591-93, 498 A.2d 22, 25-26 (1985) (DOYLE, J., concurring), *petition for allowance of appeal granted,* 511 Pa. 295, 512 A.2d 1185 (1986); *Ludwin v. Delaware River Port Authority,* 102 Pa. Commonwealth Ct. 36, 43, 517 A.2d 1006, 1010 (1986). Appellants, however, have not shown factually that the criminals nested on or inhabited the property in this case, as could have been shown by the evidence in *Johnson. See Ford.*

---

[13] "Nesting" is based upon our Supreme Court's decision in *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977). *Ford* suggests that when a property owner allows the condition of his property to deteriorate to such an extent that vagrants, derelicts and criminals

## LIABILITY OF THE CITY OF LANCASTER

Last, we turn to the trial court's granting of summary judgment in favor of Appellee City on the ground that it did not exercise care, custody or control over the parking garage because it had been relinquished to the authority. Summary judgment may be granted only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *1412 Spruce, Inc. v. Pennsylvania Liquor Control Board,* 70 Pa. Commonwealth Ct. 501, 453 A.2d 382 (1982), *aff'd,* 504 Pa. 394, 474 A.2d 280 (1984). Allegations and evidence were presented showing that the City had a leasehold interest in the parking garage and exercised some degree of control over the operations of the parking authority, thus raising questions of material fact on the issue of whether the City exercised care, custody or control over the garage, making summary judgment on this ground inappropriate. *Compare Lowman v. Indiana Area School District,* 96 Pa. Commonwealth Ct. 389, 507 A.2d 1270 (1986).

We may, however, affirm the judgment of a trial court where the result is correct, even though the reason given is erroneous, when the correct basis for the decision is clear on the record. *Bearoff v. Bearoff Brothers, Inc.,* 458 Pa. 494, 327 A.2d 72 (1974). Since we have held that Appellants' cause of action does not fall within the real property exception to governmental immunity in regard to Appellants' action against the Authority, we affirm the grant of summary judgment in favor of the City on the same basis.

---

are allowed to live in or inhabit the property, and the property owner knew of the third parties' presence, then if these third parties would avail themselves of the opportunity to commit a tort or crime against persons legitimately on the premises, the property owner could be held liable.

The orders of the Court of Common Pleas of Lancaster County are affirmed.

ORDER

Now, January 22, 1987, the Orders dated September 13, 1984 and September 24, 1984 of the Court of Common Pleas of Lancaster County in the above-captioned matter, No. 2, June Term, 1982, are hereby affirmed.